

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHRISTOPHER SESTITO, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 1:09cv65 |
| ) | |
| S. C. DEBRULAR, et al., ) | |
|     Defendants. ) | |

## ORDER

In this § 1983[1] suit, plaintiff alleges that on August 2, 2007, two police officers responding to a noise complaint at plaintiff's mother's residence violated his Fourth Amendment rights by arresting him for public intoxication without probable cause and by conducting a warrantless search of the residence and its curtilage absent exigent circumstances. Defendants, the two responding officers and the property owners association, move for summary judgment as to plaintiff's constitutional and state-law claims on essentially four grounds. Specifically, defendants argue (i) that the property owners association cannot be held liable based on any municipal theory of liability; (ii) that plaintiff's arrest was supported by probable cause; (iii) that the warrantless search of the residence and its curtilage was justified by exigent circumstances; and (iv) that even assuming that either the arrest or the search was unconstitutional, defendants are entitled to qualified immunity because plaintiff's asserted constitutional rights were not clearly established at the time of the arrest and search. In addition, defendants move for partial summary judgment with respect to plaintiff's claim for lost wages.

---

[1] 42 U.S.C. § 1983.

The matter was fully briefed, and on July 10, 2009, the parties appeared for oral argument on defendants' motions.[2] In the end, defendants' motions were denied in part and granted in part for the reasons stated from the Bench. This Order reflects that ruling and briefly states the bases for it.

I.[3]

Plaintiff Christopher Sestito is a Virginia resident whose mother owns a home located at 1004 Santa Maria Drive in Stafford, Virginia. The residence is part of a private community managed by defendant Aquia Harbour Property Owners Association, Inc. ("AHPOA"), a Virginia non-stock corporation which operates the Aquia Harbour Police Department ("AHPD"). Defendant Officer S.C. DeBrular is a police officer with the AHPD, and defendant Deputy J.M. Hierwater is a deputy sheriff with the Stafford County Sheriff's Department.

On August 2, 2007, the date of the arrest and search at issue, plaintiff was house-sitting his mother's residence while she was out of town on vacation. Plaintiff testified at his deposition in this matter that prior to the evening in issue he had been staying at his father's nearby residence and was planning to move later in the month to an apartment in Virginia Beach, Virginia. Plaintiff also testified that he intended to spend the night in question at his mother's residence. At or around 7:30 p.m., plaintiff, who was over the age of twenty-one, consumed one can of Bud Light with dinner and

---

[2] Defendant J.M. Hierwater filed one motion for summary judgment and defendants S.C. DeBrular and the Aquia Harbour Property Owners Association, Inc., filed a separate motion for summary judgment.

[3] Because the parties hotly dispute many material aspects of the events in question, the facts recited here are either undisputed or stated in the light most favorable to plaintiff, the non-movant. *See Cloaninger ex rel. Estate of Cloaninger v. McDeavitt*, 555 F.3d 324, 332 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

began to watch a baseball game on television. Plaintiff then consumed a second can of Bud Light at or around 10:00 p.m. Plaintiff testified that to the best of his knowledge, only a few other individuals were inside the home during that time, namely defendant's younger brother and a family friend living at the residence. Although plaintiff acknowledged that he had heard his younger brother laughing in the course of the evening and that he knew his brother often had friends at the house, he avers that he was unaware (i) that approximately twenty-two individuals were downstairs having a party and (ii) that many of those individuals were drinking alcohol and were either underage (under the age of 21) or minors (under the age of 18).

At approximately 11:00 p.m. that evening, plaintiff testified that he noticed two police cars with their lights flashing approach and park on the street outside the residence. At that point, he walked out of the front door and stood at the top of the front steps, where he greeted Officer DeBrular and Deputy Hierwater, who were walking up the driveway and who notified plaintiff that they were responding to a noise complaint. Plaintiff testified that he told the officers he had not heard any noise, but that he would apologize to the complainant if the officers identified the complainant. The officers, who were then standing on the front steps, informed plaintiff that the complaint was anonymous. Plaintiff then assured the officers that there was no noise coming from the house and that he would ensure that no one inside the home made any noise from that point forward. Plaintiff further testified that he then refused the officers' request to come inside the home, telling them that they would have to obtain permission from his mother. Although plaintiff testified that he offered his mother's cell phone number to the officers, he also avers that Deputy Hierwater responded that if plaintiff did not allow the officers inside the home, they would arrest plaintiff for public

intoxication. After plaintiff again refused consent to search the home, the officers arrested plaintiff for public intoxication, and Officer DeBrular placed defendant in handcuffs.[4]

Both officers testified during their depositions that prior to arresting plaintiff, they smelled an odor of alcohol emanating from him. In addition, Deputy Hierwater testified that he observed plaintiff to have bloodshot eyes. Plaintiff does not dispute either of these observations. The officers also testified that plaintiff appeared to be agitated, which Deputy Hierwater testified was an indication, based on his experience, that plaintiff was intoxicated. Although plaintiff did not dispute that he was agitated with the officers' demands to come inside the home, he testified that he was polite to the officers during the pre-arrest exchange. These three factors—an odor of alcohol, bloodshot eyes, and agitation—are the sole observations of plaintiff's behavior cited by the officers as the basis for plaintiff's arrest. Notably, the record contains no evidence that plaintiff's speech was slurred, that he had any difficulty with balance, or that he engaged in any other behavior indicative of intoxication. Although plaintiff requested that the officers conduct a breathalyzer test on him, the officers elected not to do so; to the contrary, the record reflects that the officers did not perform (nor did they ask to perform) any sort of breathalyzer or field sobriety tests on plaintiff before or after arresting him.[5]

Plaintiff testified that after he was placed under arrest, Officer DeBrular walked around one

---

[4] Plaintiff's accusations regarding the officers' alleged profanity and other behavior are not pertinent to the issues presented by the instant motions. Accordingly, it is not necessary to address or recount those accusations here.

[5] It is worth noting that plaintiff and defendants testified during their respective depositions to starkly different recollections of the nature and content of their pre-arrest conversation. Although any disputes of material fact will ultimately be resolved at trial, it is necessary at this stage to assume plaintiff's account is true. See *Cloaninger*, 555 F.3d at 332.

side of the residence and, on circling the home and coming back from the other side, told Deputy Hierwater that he did not observe anything requiring their attention. Plaintiff further testified that Deputy Hierwater then walked around the side of the house. According to the officers' deposition testimony, they initiated these inspections of the property because they were concerned that an underage drinking party was occurring at the residence. Although Officer DeBrular testified that he recalled his dispatcher mentioning possible underage drinking when relaying the anonymous complaint (and Deputy Hierwater testified that he recalled Officer DeBrular relaying that concern), the call log, which is part of this record, mentions only music and screaming. In addition, the officers testified that they inspected the premises for possible underage drinking because, notwithstanding plaintiff's statements that there was no noise coming from the home, they also observed a number of vehicles parked along the driveway and on the street outside the house.[6] Although plaintiff does not directly dispute this fact,[7] Deputy Hierwater did testify (i) that none of the vehicles were parked illegally, (ii) that the vehicles parked along the street were consistent with visitors to other homes in the area, and (iii) that the officers did not attempt to identify the vehicles' owners. Finally, Deputy Hierwater testified during his deposition that at the time he walked around the side of the house, he

---

[6] In addition, defendants contend that Deputy Hierwater observed individuals inside the residence, ostensibly through the home's windows, during the pre-arrest conversation with plaintiff. Yet, Deputy Hierwater did not testify to this fact; indeed, defendants' only proffered support for this contention is plaintiff's deposition testimony in which plaintiff (i) acknowledges that Deputy Hierwater *claimed* to see people inside the home, (ii) but avers that after Deputy Hierwater made that claim, plaintiff looked at the home and did not see anyone through the windows. Thus, it is appropriate at this stage to accept plaintiff's version of this event. *See Cloaninger*, 555 F.3d at 332.

[7] More specifically, plaintiff testified that although he did not recall observing an *unusually* large number of vehicles in view of the residence's front door, he does not deny that vehicles were parked in the driveway and along the street.

did not consider the situation to present what he considered to be exigent circumstances.

Although the parties have devoted substantial effort to alleged disputes regarding Deputy Hierwater's observations and behavior after going around the side of the house,[8] it is undisputed that a short time later, Deputy Hierwater opened the front door of the home, revealing approximately twenty-two individuals in the process of coming upstairs. After the officers conducted breathalyzer tests on a number of the individuals (but not plaintiff), some of whom were also issued summonses, plaintiff was ultimately taken into custody on charges of public intoxication, obstruction of justice, and three counts of contributing to the delinquency of a minor. Thereafter, the officers transported plaintiff to the Rappahannock Regional Jail, where he was presented to a magistrate and ultimately arraigned the next morning before being released on the afternoon of August 3, 2007. Later on,

---

[8] Specifically, Deputy Hierwater testified that on walking around the side of the house, he observed an individual, later identified as plaintiff's brother, on the elevated back porch with vomit at his feet. Deputy Hierwater further testified that plaintiff's brother was unresponsive and, as a result, that Deputy Hierwater then forced the gate on the residence's backyard fence open to check on him. After discovering that plaintiff's brother was breathing and had a pulse, Deputy Hierwater then testified that he went back down the stairs of the porch and walked to the bottom-level sliding glass door to see if anyone could identify plaintiff's brother, at which point he observed several individuals inside the home whose facial features suggested to Deputy Hierwater that they were either underage or minors. Although Deputy Hierwater testified that he did not know whether those individuals were drinking, he knocked on the sliding glass door, at which point a female individual opened the door and told Deputy Hierwater that she was both drinking and under the age of twenty-one.

Plaintiff vehemently disputes Deputy Hierwater's account, attaching photographs of the backyard porch and alleging that Deputy Hierwater could not have seen vomit at anyone's feet on that porch. In addition, plaintiff attached an affidavit from one of the individuals at the home that night which avers that Deputy Hierwater entered the home without knocking or having someone open the door from inside.

These disputes are immaterial, however, to the threshold question of whether the officers' initial inspection of the home's curtilage was constitutional. And in any event, to the extent these disputes are material to the questions presented, the facts are viewed in the light most favorable to plaintiff. *See Cloaninger*, 555 F.3d at 332.

plaintiff was found not guilty of the public intoxication and obstruction charges in a bench trial held in Stafford County District Court, and the three counts of contributing to the delinquency of a minor were *nolle prossed* in Stafford County Juvenile Court.

In sum, the pertinent events at plaintiff's mother's residence that night, distilled to their essence and viewed in the light most favorable to plaintiff, are as follows. Plaintiff consumed two alcoholic beverages in an approximately three and one-half hour span. He was aware that at least two other individuals were inside the home and was aware that his brother might have friends at the home. When the officers arrived in response to an anonymous noise complaint, they had a conversation with plaintiff in which he was polite, but agitated and refused consent to search the home, noting that it was his mother's home and offering the officers her cell phone number. On smelling an odor of alcohol and observing bloodshot eyes, the officers arrested plaintiff for public intoxication. The officers observed no other outward behavioral indications of intoxication. After arresting plaintiff, both officers conducted inspections of the residence's curtilage based only on the anonymous noise complaint, plaintiff's observed behavior, and the number of cars in the driveway and along the road—circumstances that Deputy Hierwater conceded during his deposition testimony did not present any sort of exigent circumstances.

More than a year later, on December 29, 2008, plaintiff filed a complaint in Stafford County Circuit Court against Officer DeBrular, Deputy Hierwater, and the AHPOA, alleging that the August 2007 arrest lacked probable cause and that the accompanying warrantless search of the home violated his constitutional rights. Based on those allegations, plaintiff's complaint asserted five claims, namely (i) state-law assault and battery (Count 1); (ii) state-law false imprisonment (Count 2); (iii)

state-law malicious prosecution (Count 3); (iv) state-law intentional infliction of emotional distress (Count 4); and (v) a conspiracy to deny plaintiff his constitutional and statutory rights under, *inter alia*, the Civil Rights Act (Count 5).[9] On January 21, 2009, Deputy Hierwater removed the case to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1441, 1443, and 1446. On June 9, 2009, defendants filed their motions for summary judgment, pursuant to Rule 56, Fed. R. Civ. P. The matter was fully briefed and argued, and in the end, for the reasons stated from the Bench on July 10, 2009, and elucidated here, defendants' motions were granted in part and denied in part.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56 only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 377, 322 (1986). Thus, it is also well-settled that in ruling on a motion for summary judgment, the facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the non-moving party. *See Cloaninger ex rel. Estate of Cloaninger v. McDeavitt*, 555 F.3d 324, 332 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

---

[9] Although Count 5 is by no means a model of clarity, it is clear, based on the complaint and record as a whole, that Count 5 is a § 1983 claim asserting violations of plaintiff's Fourth Amendment rights against unreasonable searches and seizures.

## III.

Defendants' motions present five questions. First, it is necessary to determine whether plaintiff has adduced any evidence to support a proper theory of municipal liability against AHPOA. Second, it is necessary to determine whether plaintiff's arrest, based on the facts viewed in the light most favorable to plaintiff, was supported by probable cause. Third, it is necessary to determine whether the officers' subsequent actions of walking around the home without a warrant to inspect the premises were unreasonable based on the facts as assumed in plaintiff's favor. Assuming either the arrest or search were unconstitutional under these standards, it is then necessary to determine whether the officers are nonetheless entitled to qualified immunity—in other words, whether the constitutional right alleged to have been violated was clearly established on August 2, 2007. Finally, assuming plaintiff's claims survive defendants' motions for summary judgment on qualified immunity grounds, it is necessary to determine whether plaintiff has adduced factual support for his lost wages damages claim. Each of these questions is separately addressed.

### A.    Plaintiff's Claims against AHPOA

First, AHPOA is entitled to summary judgment on plaintiff's claims because plaintiff has failed to adduce any evidence supporting a valid theory of municipal liability.[10] Rather, plaintiff's complaint appears to allege that AHPOA is liable on a *respondeat superior* theory, which, as well-settled authority reflects, does not support municipal liability in § 1983 cases. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1985), *cited in Austin v. Paramount Parks, Inc.*,

---

[10] It is worth noting that plaintiff does not contest that although AHPOA is a property owners association, it should be considered a municipality for purposes of the motions at issue.

195 F.3d 715, 727 (4th Cir. 1999); *see also Ruttenberg v. Jones*, 603 F. Supp. 2d. 844, 872 (E.D. Va. 2009). In addition, plaintiff's counsel acknowledged at the July 10 hearing that plaintiff does not seek to recover from AHPOA, nor did plaintiff's counsel offer any theory of liability to sustain plaintiff's claims against AHPOA. Accordingly, plaintiff's claims against AHPOA must be dismissed with prejudice.

**B.    The Arrest and Search**

Next, with respect to plaintiff's constitutional claims against the officers in their individual capacities, it is well-settled that a two-pronged inquiry governs defendants' motions for summary judgment, namely (i) whether the facts, read in the light most favorable to plaintiff, make out a violation of a constitutional right; and (ii) if so, whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009). Although *Pearson* holds that a district court has the discretion to proceed directly to the second question—namely, whether the right at issue is "clearly established"—it is appropriate, based on the facts of this case, to address first whether the arrest and search, based on the facts viewed in the light most favorable to the plaintiff, were unconstitutional and if so, then to determine whether the constitutional rights at issue were clearly established at the time of the arrest and search. *See, e.g.*, *Ruttenberg*, 603 F. Supp. 2d at 862 n.32.

   *(1)    Constitutionality of Plaintiff's Arrest*

First, it is well-settled that a warrantless arrest is reasonable under the Fourth Amendment, subject to limited exceptions not relevant here, "only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979), *quoted in Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001).

And "[p]robable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Rogers*, 249 F.3d at 290 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). In applying this standard, it is also well-settled that "[w]hether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the [arresting] officer[s], and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992), *quoted in Rogers*, 249 F.3d at 290. Thus, "if a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right . . . ensues." *Rogers*, 249 F.3d at 290 (citing *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996)). Accordingly, it is necessary to address the contours of the offense at issue in this case.

Here, Officer DeBrular and Deputy Hierwater arrested plaintiff for public intoxication, which is prohibited by Va. Code § 18.2-388.[11] This statute's plain language provides, in pertinent part, that being "intoxicated in public" constitutes a Class 4 misdemeanor. And under Virginia law, it appears

---

[11] It is worth noting that there is some dispute as to whether plaintiff was arrested pursuant to Va. Code § 18.2-388, the state-law statute for public intoxication, or the Stafford County municipal code section prohibiting a person from being drunk in public. *See* Stafford County, Va., Code § 17-10. Yet, any such distinction is immaterial, as it is clear that the municipal code provision, which cross-references § 18.2-388, should be read no differently from the state statute. *See, e.g., Burgess v. City of Virginia Beach*, 9 Va. App. 163, 164 (1989) (observing that city ordinance prohibiting being "drunk in public" parallels § 18.2-388). In addition, it appears on this record that plaintiff was arrested for violation of § 18.2-388, as (i) Officer DeBrular's incident report, attached to plaintiff's state-court complaint, cites § 18.2-388 as the operative public intoxication statute; and (ii) the cases relied upon by defendants in their briefs interpret § 18.2-388, thus evidencing defendants' acknowledgment that the two statutes are identical for purposes of the instant motions.

well-settled that "intoxicated" in § 18.2-388 cases involving alcohol is defined as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior." Va. Code § 4.1-100; *see also United States v. Brown*, 401 F.3d 588, 597 (4th Cir. 2005) (quoting § 4.1-100 as the operative definition of "intoxicated" for purposes of § 18.2-388).[12] Moreover, the Fourth Circuit in *Brown*, applying § 18.2-388, clearly held that an arrest for public intoxication "based solely on glassy, bloodshot eyes and the strong smell of alcohol" was not supported by probable cause. 401 F.3d at 597.[13]

---

[12] *But cf. Ratliff v. Commonwealth*, 53 Va. App. 443, 445–50 (2009) (holding that § 4.1-100's definition of "intoxicated" does not apply to Va. Code §§ 18.2-51.4 and 18.2-266 in a case involving alleged driving while intoxicated by drugs other than alcohol). Although *Ratliff* indicates that § 4.1-100 does not *always* supply the definition for "intoxicated" under Virginia law, several recent unpublished Virginia Court of Appeals decisions make clear that § 4.1-100 defines the term "intoxication" for use in § 18.2-388 cases involving alcohol. *See Commonwealth v. Lasley*, No. 2093-08-3, 2009 WL 62655, at *3 (Va. Ct. App. Jan. 13, 2009) (defining "intoxicated" in § 18.2-388 by reference to § 4.1-100); *see also Brower v. Commonwealth*, No. 0437-07-4, 2008 WL 425574, at *1 (Va. Ct. App. Feb. 19, 2008) (same); *Wilson v. Commonwealth*, No. 2850-00-2, 2002 WL 1056373, at *2 (Va. Ct. App. May 28, 2002) (same).

[13] More specifically, in *Brown* the Fourth Circuit observed:

> [W]e find it significant that in every reported Virginia decision in which the court found probable cause to arrest a person for public intoxication, there was evidence that the person had consumed enough alcohol to impair his physical movement or speech. *See Clagett v. Commonwealth*, 252 Va. 79, 88 (1996) (defendant was unconscious outside apartment complex); *Fierst v. Commonwealth*, 210 Va. 757, 759–60 (1970) (defendant was slumped in his vehicle with his head leaning back on the seat); *Clarke v. Commonwealth*, 32 Va. App. 286, 295–96 (2000) (officer "detected the odor of alcohol on [defendant], observed his bloodshot eyes, and noted his erratic speech"). Moreover, our research has uncovered, and the Government has cited, no published opinion of the Virginia appellate courts finding probable cause for public intoxication based solely on glassy, bloodshot eyes and the strong smell of alcohol.

401 F.3d at 597 (internal footnote omitted). In addition, the Virginia Court of Appeals cited approvingly to *Brown* in *Jones v. Commonwealth*, 51 Va. App. 730, 737 (2008) (finding probable

These principles, applied here, compel the conclusion at this stage that plaintiff's arrest for public intoxication was not supported by probable cause.[14] More specifically, the facts of this case, read in the light most favorable to plaintiff, are not materially distinguishable from those that failed to support a probable cause finding in *Brown*.[15] Defendants attempt to distinguish *Brown* by pointing to plaintiff's alleged agitation in the course of the pre-arrest conversation. Yet, notwithstanding Deputy Hierwater's conclusory assertion that the "agitation" was indicative of intoxication, mere "agitation," without more, is simply not indicative of intoxication. This is particularly so in light of plaintiff's assertions during his deposition testimony that although he was (perhaps understandably, assuming his version of events) upset that the officers were demanding to enter the house, he was nonetheless polite and cooperative. Moreover, the officers' failure to observe a single additional behavioral observation indicating intoxication (such as slurred speech or difficulty with balance) suggests that the alleged "agitation" was not indicative of intoxication. Finally, defendants have cited no authority contrary to *Brown*, nor has a search revealed any such authority. Accordingly, based on the current record viewed in the light most favorable to plaintiff, plaintiff's arrest lacked probable cause and thus violated plaintiff's Fourth Amendment right against unreasonable seizures.[16]

---

cause for driving under the influence arrest where defendant smelled strongly of alcohol, had bloodshot eyes, was argumentative, and refused to perform field sobriety tests).

[14] Importantly, defendants do not seek, nor does the record support, a finding that plaintiff's initial arrest was supported by probable cause for any other crime.

[15] Notably, although the record in *Brown* supported a finding that there was a "strong" odor of alcohol, that factor is absent here. 401 F.3d at 597.

[16] Two additional issues merit brief mention. First, defendant DeBrular's reliance on *DeChene v. Smallwood*, 226 Va. 475 (1984), for the proposition that the officers' good faith justifies plaintiff's arrest is misplaced. Put succinctly, the record simply does not support, as

*(2) Constitutionality of the Search*

Next, with respect to the search of the residence, the analysis must focus sharply on the officers' decision to walk around the side of the home, as it is necessary at this stage to assume that when the officers did so, they conducted a warrantless search of the home's curtilage.[17] In this respect, defendants' sole proffered explanation is their assertion that exigent circumstances relating to possible underage drinking justified their actions. Yet, based on the facts viewed in the light most favorable to plaintiff, defendants' argument in this regard fails to persuade. Although the officers, in good faith, may have *suspected* (and indeed, were ultimately proven correct) that underage drinking was ongoing at the residence, the limited information available to them—an anonymous noise complaint,[18] the presence of an adult who had consumed alcohol, and multiple cars in the driveway and along the road—simply did not rise to the level of exigent circumstances justifying a warrantless inspection of the home's curtilage. *See, e.g., United States v. Moses*, 540 F.3d 263, 270

---

*DeChene* requires, a reasonable basis at this stage for the officers' belief that the public intoxication statute applied in these circumstances.

Second, the parties also dispute whether the officers had probable cause to believe that plaintiff was "in public" under § 18.2-388. *Compare Crislip v. Commonwealth*, 37 Va. App. 66, 71–72 (2001) (defining "in public" in § 18.2-388 as "a place in open view, visible to the community" and holding a defendant was "in public" on a mobile home "front porch in open view of nearby neighboring homes and the public street") *with Rogers*, 249 F.3d at 293–94 (holding individual was not "in public" in a driveway at the end of a private road outside the view of any public street). It is unnecessary to reach or decide that issue, however, because the officers did not have probable cause to believe plaintiff was intoxicated.

[17] In this respect, it is unnecessary at this stage to address whether Deputy Hierwater's subsequent actions (in opening the backyard gate and in entering the home) were justified by exigent circumstances, as his proffered justifications for doing so arose subsequent to his crossing into, and inspection of, the home's curtilage.

[18] Defendants contend that the noise complaint also mentioned possible underage drinking, but the current record does not support this contention.

-14-

(4th Cir. 2008) (citing *United States v. Turner*, 650 F.2d 526 (4th Cir. 1981) (setting forth nonexhaustive list of relevant factors in evaluating whether exigent circumstances are present)).[19]

### (3)  Qualified Immunity

Next, because the arrest and search were unconstitutional given plaintiff's version of the facts, it is next necessary to determine whether plaintiff's allegedly violated constitutional rights were clearly established at the time of the violation. In this regard, it is well-settled that the appropriate inquiry is "'whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law' at the time" of the alleged violation. *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). And in this respect, defendant has seriously contested only whether the law regarding probable cause to arrest for a § 18.2-388 violation was clearly established at the time of plaintiff's arrest. Yet, it is clear on the existing law that where, as here, a person is arrested outside his front door for being drunk in public solely on the basis of an alcoholic odor and bloodshot eyes, the arrest is unreasonable; put simply, there must be more credible indications of intoxication than the meager basis present here. *See Brown*, 401 F.3d at 597. Accordingly, defendants' motions for summary judgment on plaintiff's constitutional claims on qualified immunity grounds must be denied.[20]

---

[19] In addition, defendants have raised some argument that plaintiff does not have standing to bring a claim for the search of the home because he was not the owner of the home and thus lacked a legitimate expectation of privacy in the premises. Defendant's argument in this regard is rejected at this stage, however, as plaintiff clearly testified that at the time of the arrest and search, he was an overnight guest at the home. *See, e.g., Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990).

[20] In addition, disputes of material fact preclude summary judgment on plaintiff's state-law claims, although it seems doubtful that plaintiff's claim of intentional infliction of emotional distress meets the stringent requirements of Virginia law. *See Baird ex rel. Baird v. Rose*, 192

C.  **Plaintiff's Lost Wages Claim**

Finally, plaintiff's claim for lost wages is speculative, rests on inadmissible hearsay, and hence is vulnerable to partial summary judgment in favor of defendants. In this respect, plaintiff's counsel forecasts that plaintiff's lost wages claim would be based solely on plaintiff's testimony that he was offered a $47,000/year job prior to his arrest and that the prospective employer ultimately revoked the offer following plaintiff's arrest. Even assuming that evidence of the offer is admissible nonhearsay, plaintiff's counsel concedes that plaintiff will not be able to present any nonhearsay (or admissible hearsay) evidence as to the withdrawal or the reasons for the withdrawal. On these facts, it is appropriate to grant partial summary judgment for defendants on plaintiff's lost wages claim.

Accordingly, for these reasons, and the reasons stated from the Bench,

It is hereby **ORDERED** that defendants' motions for summary judgment are **GRANTED IN PART**, insofar as (i) plaintiff's claims against defendant Aquia Harbour Property Owners Association are **DISMISSED WITH PREJUDICE** and (ii) defendants are granted partial summary judgment with respect to plaintiff's claim for lost wages. Defendants' motions for summary judgment are **DENIED** in all other respects.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
July 10, 2009

/s/
T. S. Ellis, III
United States District Judge

---

F.3d 462, 472 (4th Cir. 1999) (citing *Womack v. Eldridge*, 215 Va. 338, 342 (1974)).